# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **UNITED STATES OF AMERICA**, | **CRIMINAL ACTION** |
| v. | |
| **VYACHESLAV ZLATKOVSKIY** | **NO. 24-323** |

## MEMORANDUM OPINION

Defendant Vyacheslav Zlatkovskiy is charged with possession of two non-registered firearms—one with a silencer and another with a modified barrel of less than sixteen inches in length—in violation of 26 U.S.C. §§5845(a)(4) and (7), 5861(d), and 5871.  Pursuant to Federal Rules of Criminal Procedure 12(b)(3)(C) and 41(h), Zlatkovskiy now moves to suppress all physical evidence seized from a detached shed on his property, arguing that the search warrant was not sufficiently particularized to encompass that structure as required by the Fourth Amendment to the United States Constitution.  For the reasons that follow, Zlatkovskiy's Motion shall be denied.

**I.     FACTUAL BACKGROUND**[1]

On February 27, 2024, the Philadelphia Police Department received a report that Zlatkovskiy shot a man in his right leg outside of Zlatkovskiy's home at 408 Densmore Road in Philadelphia.  Detectives interviewed additional witnesses, one of whom confirmed that Zlatkovskiy had told her that he indeed shot the victim.  Detectives then applied for and obtained a warrant to search for: "[a]ny and all firearms, in particularly [sic] a brown and black hunting style rifle, any cell phone belonging to Vyacheslav Zlatkovskiy, ant [sic] ballistic evidence, any digital evidence capturing the altercation and proof of ownership/residence to that property."

---

[1] Except where otherwise noted, the following facts are not in genuine dispute.

1

Under the heading of the warrant application titled, "Specific Description of Premises and/or Persons to be Searched (Street and No., Apt. No., Vehicle, Safe Deposit Box, etc.)," detectives listed: "408 Densmore Road, Philadelphia, PA, 19116.  TWIN RANCH STYLE PROPERTY."

When officers arrived at that address the next morning to execute the warrant, they learned that the premises also included a fenced-in backyard with a locked, detached shed, which was located approximately fifteen feet from the rear entrance of the home.  Mounted to the door of that shed was a mailbox bearing the numbers "408".  With that discovery, officers expanded their search to include both the house and the shed, and, in so doing, recovered the following items: seven firearms; six suppressors and silencers; several boxes of ammunition and drum magazines; assorted household tools; and, various personal effects.  Zlatkovskiy's DNA was found on several of those items.

## II.    LEGAL STANDARD

The Fourth Amendment guarantees the "right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures."  U.S. Const. amend. IV.  If a defendant believes that the Government acquired certain evidence through an unlawful search or seizure, he may file a pretrial motion to suppress that evidence pursuant to Federal Rules of Criminal Procedure 12(b)(3)(C) and 41(h).  To prevail, he must first show that the search or seizure was conducted without a warrant.  *United States v. Johnson*, 63 F.3d 242, 245 (3d Cir. 1995).  The burden then shifts to the Government to prove by a preponderance of the evidence that each individual act constituting the search or seizure was reasonable.  *See United States v. Ritter*, 416 F.3d 256, 261 (3d Cir. 2005); *United States v. Matlock*, 415 U.S. 164, 177 n.14 (1974).

If the Court deems the challenged search or seizure to be unlawful, then the "exclusionary rule" forbids the use of improperly obtained evidence at trial.  *Herring v. United*

*States*, 555 U.S. 135, 139 (2009).  That rule "reaches not only primary evidence obtained as direct result of an illegal search or seizure, but also evidence later discovered and found to be derivative of an illegality or fruit of the poisonous tree."  *Segura v. United States*, 468 U.S. 796, 804 (1984) (citation and internal quotation marks omitted).

### III.    DISCUSSION[2]

Zlatkovskiy moves to suppress all physical evidence seized from the detached shed in the backyard of his property, arguing that the search warrant was not sufficiently particularized as required by the Fourth Amendment.  Specifically, he argues that the warrant only authorized a search of the "main residence" on his property, since the application simply listed "408 Densmore Road, Philadelphia, PA, 19116.  TWIN RANCH STYLE PROPERTY" as the place to be searched.  Therefore, because there is no additional "language in the warrant which is inclusive of other structures" on the property—for instance, the "premises of 408 Densmore Road"—Zlatkovskiy contends that the search of the shed exceeded the scope of the warrant and should be deemed unlawful.  The Government maintains to the contrary that the shed is covered under the warrant because: (1) it falls within the home's curtilage; and, (2) the warrant does not include any language limiting the premises to be searched on the property.

The Fourth Amendment directs that "no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and *particularly describing the place to be searched and the*

---

[2] In deciding suppression motions, evidentiary hearings are not required as a matter of course.  *United States v. Hines*, 628 F.3d 101, 105 (3d Cir. 2010); *see also* Fed. R. Crim. P. 12(c) (stating that courts "*may*" schedule a motion hearing (emphasis added)).  Only if the motion is "sufficiently specific, non-conjectural, and detailed to enable the court to conclude that (1) the defendant has presented a colorable constitutional claim, and (2) there are disputed issues of material fact that will affect the outcome of the motion to suppress[]" must a District Court convene such a hearing *Hines*, 628 F.3d at 105 (citation omitted); *see also United States v. Voigt*, 89 F.3d 1050, 1067 (3d Cir. 1996) (explaining that an evidentiary hearing is required only when the suppression motion raises "issues of fact material to the resolution of the defendant's constitutional claim").

Here, neither Zlatkovskiy nor the Government has requested an evidentiary hearing, and the Court does not find it necessary to convene one *sua sponte* because there are no disputed "issues of fact material to the resolution of the defendant's constitutional claim."  *Voigt*, 89 F.3d at 1067; *see also Hines*, 628 F.3d at 105.

*persons or things to be seized*." U.S. Const. amend. IV. (emphasis added). The Third Circuit has referred to that provision, which is often referred to as the "particularity requirement," as the "touchstone" and "fundamental purpose[]" of the warrant. *Doe v. Groody*, 361 F.3d 232, 239 (3d Cir. 2004). That it is because particularized descriptions: (1) "memorialize[] precisely what search or seizure the issuing magistrate intended to permit"; (2) "confine[] the discretion of the officers who are executing the warrant"; and, (3) "inform the subject of the search what can be seized." *Id*. (citing *Marron v. United States*, 275 U.S. 192, 196, (1927); *Bartholomew v. Pennsylvania*, 221 F.3d 425, 429 (3d Cir. 2000)); *see also United States v. Perez*, 712 F. App'x 136, 139 (3d Cir. 2017) ("[T]he particularity requirement intends that 'nothing is left to the discretion of the officer executing the warrant.'" (quoting *Marron*, 275 U.S. at 196)).

Nevertheless, warrants must be interpreted in a "common sense, non-technical fashion," *see Groody*, 361 F.3d at 239 (citations omitted), as it is "[p]ractical accuracy, rather than technical precision," that "controls the determination of whether a search warrant adequately describes the place to be searched," *see* 68 *Am. Jur. 2d Searches and Seizures* § 226 (collecting cases). So, to comport with the Fourth Amendment's particularity requirement, a search warrant's description of the place to be searched must be drafted such that an officer can with "reasonable effort ascertain and identify the place intended." *Maryland v. Garrison*, 480 U.S. 79, 88 (1987) (citing *Steele v. United States*, 267 U.S. 498, 503 (1925)); *see also Groody*, 361 F.3d at 239 ("[A]lthough a warrant should be interpreted practically, it must be sufficiently definite and clear so that the magistrate, police, and search subjects can objectively ascertain its scope." (citation omitted)).

In *United States v. Bansal*, 663 F.3d 634, 663 (3d Cir. 2011), the Third Circuit continued to sketch out the contours of the particularity requirement when it determined that the search of a

detached garage did not exceed the scope of a warrant that sought authorization to search "the premises known and described as 23 Garden City Avenue, Point Lookout, New York." *Id.* It reasoned that because the language of the warrant did not limit the search to just the home, but rather "a search of the entire '*premises*,'" the garage fell within the scope of the warrant. *Id.* (emphasis added); *cf. United States v. Griffin*, 827 F.2d 1108, 1115 (7th Cir. 1987) (noting that the scope of a search warrant is not limited by "the absence of a specific reference in the warrant to each and every building on the 'premises'"). It also stated that "if the garage was within the curtilage"—the area "immediately adjacent" to one's home—then "for Fourth Amendment purposes it was part of the premises at 23 Garden Avenue." *Bansal*, 663 F.3d at 663. Deciding that the curtilage issue was "ancillary to the validity" of the challenged search, however, the Third Circuit declined to say more as to how the curtilage analysis interacted with the particularity requirement. *Id.*

Accordingly, the Third Circuit has yet to consider the precise question posed by Zlatkovskiy's Suppression Motion—that is, whether a warrant authorizes a search of a detached structure on a property, which the Government submits is curtilage, when the language of that warrant only includes the address of the property and nothing more. In the absence of such analysis, a recent case from the Tenth Circuit is instructive. In *United States v. Ronquillo*, 94 F.4th 1169 (10th Cir. 2024), investigators from the Denver Police Department obtained a search warrant for a place described in the application as "836 North Linley Court, a single family [sic] structure with green siding and trim on the east side of North Linley Court with a black metal security door with the numbers '836' to the right of the door in black." *Id.* at 1172. When investigators arrived at that address to execute the warrant, they discovered that the property contained two structures: the main residence and a detached garage in the backyard. *Id.* As the

Tenth Circuit put it:

> A brick and wrought iron fence lined the property's front perimeter and a chain link fence extended from the sides of the detached garage and lined the property's back perimeter. The detached garage stood about twenty-five feet away from the residence with a walkway connecting the two structures. The detached garage had two boarded-up windows and a door facing the backyard and the residence.

*Id.* Investigators ultimately decided to "breach[] the detached garage to secure the interior," where they found the defendant "sleeping on a bed." *Id.* At that point, the defendant "arose from the bed, shoved a plastic bag into his rear pocket, and exited the detached garage where the SWAT team detained [him]." *Id.* Officers immediately "performed two pat downs" of the defendant and seized bags of "cocaine, methamphetamine, and heroin" from his pockets. *Id.*

Prior to trial, the defendant moved to suppress the evidence found on his person, which Motion the District Court denied. *Id.* A jury eventually convicted him of possession with intent to distribute methamphetamine, cocaine, and heroin, and, shortly thereafter, the District Court sentenced him to a term of 210 months' imprisonment. *Id.* On appeal, the defendant asserted that "the warrant did not authorize the [Denver Police Department's] search of the detached garage because the warrant and supporting affidavit contained no reference" to it. *Id.* at 1173. But the Tenth Circuit found that argument unavailing and affirmed the District Court's denial of the suppression motion, holding, in relevant part, that "police may search a detached structure not directly referenced in a warrant if the curtilage contains the detached structure." *Id.* (citations omitted). It explained:

> We have consistently held that a search warrant authorizing a search of a certain place includes any detached structures and vehicles located within its curtilage. For example, in *United States v. Earls*, [42 F.3d 1321, 1327 (10th Cir. 1994),] we held that a search warrant authorized the search of a detached garage, shed, and office because the detached structures fell within the curtilage, even though the search warrant did not describe them. So we must determine whether the detached garage falls within the curtilage of the residence.

6

*Id.* (cleaned up).

Upon consideration, this Court concurs with the Tenth Circuit's reasoning in *Ronquillo* and shall apply the framework articulated therein for the purposes of analyzing Zlatkovskiy's Suppression Motion. Therefore, the legality of the search of the detached shed on Zlatkovskiy's property—an area "not directly referenced in [the] warrant"—hinges upon whether that shed falls within curtilage of his home. *Id.*

The issue of whether an area near a defendant's home constitutes curtilage is a familiar one within the Third Circuit. *See, e.g., Est. of Smith v. Marasco*, 430 F.3d 140, 156 n.14 (3d Cir. 2005); *United States v. Moses*, __ F.4th__, 2025 WL 1840675, at *1-5 (3d Cir. July 3, 2025). "The Fourth Amendment expressly protects houses." *Moses*, 2025 WL 1840675, at *1. "Yet as courts have long recognized, a house's boundaries stretch beyond its four walls to 'the land immediately surrounding and associated with the home.'" *Id.* (quoting *Oliver v. United States*, 466 U.S. 170, 180 (1984)). So, in other words, curtilage is considered to be "part of the home itself for Fourth Amendment purposes." *Florida v. Jardines*, 569 U.S. 1, 6 (2013) (citation omitted)); *see also California v. Ciraolo*, 476 U.S. 207, 212-13 (1986) ("The protection afforded the curtilage is essentially a protection of families and personal privacy in an area intimately linked to the home, both physically and psychologically, where privacy expectations are most heightened."). As such, Fourth Amendment protections—specifically, that "[p]olice cannot enter . . . without probable cause and either a warrant or an exception to the warrant requirement"— apply. *Moses*, 2025 WL 1840675, at *1 (citing *Collins v. Virginia*, 584 U.S. 586, 593, 601 (2018)).

In determining whether a particular area constitutes curtilage, a district court may employ—as a heuristic device; a "useful analytical tool"—the four factors set forth in *United*

*States v. Dunn*, 480 U.S. 294, 301 (1987)," *Moses*, 2025 WL 1840675, at *3, which are:

> [1] the proximity of the area claimed to be curtilage to the home, [2] whether the area is included within an enclosure surrounding the home, [3] the nature of the uses to which the area is put, and [4] the steps taken by the resident to protect the area from observation by people passing by.

*Dunn*, 480 U.S. at 301. That said, "[t]he test for whether an area is curtilage is not the *Dunn* factors themselves." *Moses*, 2025 WL 1840675, at *3. Rather, the question at its core is "'whether the area in question is so intimately tied to the home itself that it should be placed under the home's 'umbrella' of Fourth Amendment protection.'" *Id.* (quoting *Dunn*, 480 U.S. at 301).

To that end, the Supreme Court has cautioned that the combination of the *Dunn* factors might not "produce[] a finely tuned formula, that, when mechanically applied, yields a 'correct' answer to all extent-of-curtilage questions." *Dunn*, 480 U.S. at 301. For instance, in cases implicating apartments or multi-family homes—especially those in "city setting[s]"—the Third Circuit has noted that the *Dunn* factors may be "less determinative." *United States v. Benish*, 5 F.3d 20, 24 (3d Cir. 1993) (citing *United States v. Acosta*, 965 F.2d 1248, 1256 (3d Cir. 1992)); *United States v. Romano*, 388 F. Supp. 101, 104, 104 n.5 (E.D. Pa. 1975) (noting that "[t]he concept of curtilage has been significantly modified when applied to a multiple dwelling," such as an apartment building).

Against that backdrop, the Court makes the following findings.

*Proximity.* Starting with the first factor, the shed was a stone's throw—approximately fifteen feet—from the rear entrance of Zlatkovskiy's home. The slight distance between the two structures weighs in favor of finding that the shed constituted curtilage. *Compare Ronquillo*, 94 F.4th at 1174 ("The close proximity of the detached garage to the residence suggests that it falls within the curtilage of the residence. The detached garage was about twenty-five feet from the

main residence, and a walkway through the backyard connected the detached garage to the main residence.") and *United States v. Moye*, 722 F. Supp.3d 506, 515 (M.D. Pa. 2024) ("The narrow passage lies immediately behind 258 East Philadelphia Street, and therefore it could potentially be treated as an adjunct of the house.") *with Vuyanich v. S. Huntingdon Twp.*, 679 F. Supp.3d 205, 223 (W.D. Pa. 2023) (finding that a distance of "50 to 75 yards" (*i.e.*, 150 to 225 feet) between the plaintiff's dwelling and the shed in question "weigh[ed] against a finding that [the] area where the shed was located constitute[d] curtilage").

*Enclosure.* The second factor considers whether the area in question was "enclosed with the home" such that it could be considered curtilage, or whether it was, instead, in an area "separate from the residence." *Moses*, 2025 WL 1840675, at *5 (quoting *Dunn*, 480 U.S. at 302). Here, the shed was enclosed by a white fence that surrounded the entire property, which suggests that the area was "part and parcel of the house." *Dunn*, 480 U.S. at 302. Accordingly, this factor suggests that the shed should be regarded as curtilage.

*Nature of Use.* The third factor is an objective inquiry that asks whether a reasonable officer would believe that the space was used for "private, home activities." *Moses*, 2025 WL 1840675, at *5 (citing *Dunn*, 480 U.S. at 302-03). How the space was actually used by Zlatkovskiy does not factor into the equation. *Id.* On one hand, a reasonable officer viewing the shed might believe that it was being used for private, home activities, as there was a mailbox bearing the numbers "408"—the same number as the main residence—mounted to the door of the shed and a lock to safeguard the structure. But in the absence of other indicators, this factor is neutral.

*Shielded from Public View.* Finally, the fourth factor—the steps taken by Zlatkovskiy to protect the shed from public observation by passersby—weighs in favor of a curtilage

9

determination as the shed had a locked door and opaque walls that prevented public observation of its interior.

Thus, on balance, the detached shed on Zlatkovskiy's property was "intimately tied to the home itself" such that it should be considered curtilage and "placed under the home's 'umbrella' of Fourth Amendment protection." *Dunn*, 480 U.S. at 301. Although the shed was "not directly referenced in [the] warrant," the search of that structure nonetheless passed constitutional muster because it constituted curtilage. *See Ronquillo*, 94 F.4th at 1173; *cf. Bansal*, 663 F.3d at 663. For those reasons, Zlatkovskiy's Suppression Motion shall be denied.[3] An appropriate order follows.

**BY THE COURT:**

*S/* **WENDY BEETLESTONE**

**WENDY BEETLESTONE, J.**

---

[3] The Government asserts that, in any event, the proffered evidence should not be suppressed under the good-faith exception to the exclusionary rule, which applies when an officer acts "upon an objectively reasonable good faith belief in the legality of [his] conduct." *United States v. Vasquez-Algarin*, 821 F.3d 467, 483 (3d Cir. 2016). However, having found that the shed constituted curtilage, thereby rendering the search of that structure constitutional, the Court need not address the Government's argument.